IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| STEPHEN P. MILLER | § | |
| | § | |
| v. | § | 2:08-CV-243 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION TO DENY IN PART
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant STEPHEN P. MILLER has filed with this Court a Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. On August 25, 2009, the District Judge issued an Order adopting an August 7, 2009 Report and Recommendation to dismiss issues 3, 4, 5, and 6. This leaves issues 1 and 2, both regarding ineffective assistance of counsel claims, for the Court to dispose of. For the reasons set forth below, it is the opinion of the undersigned United States Magistrate Judge that the remainder of defendant's motion, i.e. his first and second issues should be DENIED.

I.
PROCEDURAL BACKGROUND

On July 13, 2006, a jury convicted defendant of income tax evasion, and in September 2006, defendant was sentenced to serve a forty-six-month term of incarceration and ordered to pay $968,836.27 in restitution. In April 2008, the Fifth Circuit affirmed the judgment. *United States v. Miller*, 520 F.3d 504 (5th Cir. 2008). Defendant's petition for writ of certiorari was denied in October 2008. Two months later, defendant filed the instant motion to vacate, set aside, or correct sentence.

As discussed above, on August 25, 2009, defendant's issues number 3, 4, 5, and 6 were dismissed—issue 3 because the Fifth Circuit had already decided the issue and issues 4, 5, and 6 because they were not raised on direct appeal and were procedurally defaulted. This left only issues number 1 and 2, which relate to defendant's ineffective assistance of counsel claims. To properly dispose of these claims, the Court conducted an evidentiary hearing on September 15, 2009. At this hearing, the Court heard the testimony of defendant's brother, Mr. Alan Miller; defendant, Dr. Stephen Miller; and defendant's trial attorney, Mr. Warren Clark. The Court additionally heard oral arguments from both parties' attorneys.

## II.
## DEFENDANT'S REMAINING ALLEGATIONS

The issues remaining after the Court's August 25, 2009 dismissal in part are as follows:

1. Defendant received ineffective assistance of counsel because his trial attorney incorrectly advised him of the repercussions of proceeding to trial.

2. Defendant received ineffective assistance of counsel because his trial attorney failed to object to the imposition of restitution upon sentencing.

## III.
## INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Proving Ineffective Assistance of Counsel

The proper standard for judging a defendant's contention he is entitled to relief on the ground his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, a defendant must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064. An attorney's performance was deficient if the attorney made errors so serious

he or she was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly differential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065.

Additionally, a defendant must show counsel's deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. Specifically, to prove prejudice a defendant must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88, n. 4. (5th Cir.1993).

### B. Three-Month vs. Three-Level Reduction in Sentence

Defendant first avers his trial counsel informed him he would only receive a three-month reduction in his sentence if he accepted a plea agreement, when, in fact, he would have received a three-level reduction, reducing his sentence by at least thirteen months. Defendant contends that, but for counsel's deficient performance, he would have entered into a plea agreement.

> One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty. An attorney fulfills this obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea. Apprising a defendant about his exposure under the

> sentencing guidelines is necessarily part of this process. A defendant cannot make
> an intelligent choice about whether to accept a plea offer unless he fully understands
> the risks of proceeding to trial.

*United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005). Not only is representation deficient under *Strickland* if the attorney fails to properly apprise the defendant of the consequences of pleading guilty, but such a failure is prejudicial if it results in any increase in the amount of time defendant must spend in jail. *Id.* at 581 (reiterating "any amount of jail time" has significance under *Strickland*); *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004).

Under this caselaw, if defendant's attorney incorrectly advised defendant Miller that his guilty plea would result in a maximum of forty-three months in prison (rather than the forty-six month maximum sentence defendant ultimately received) when in fact a guilty plea would have resulted in a maximum thirty-three month sentence, then his representation may have been deficient. *See id.* Whether such deficiency would have prejudiced defendant is not clear, and the Court withholds a full discussion of that issue. *See* U.S. SENTENCING GUIDELINES MANUAL § 3E1.1, n. 3 (1998) ("A defendant who enters a guilty plea is not entitled to a[] [downward offense level] adjustment under this section as a matter of right."); *Pondexter v. Quarterman*, 537 F.3d 511, 521 (5th Cir. 2008) (holding a reviewing court need not consider the deficiency prong of the *Strickland* analysis if no prejudice has been demonstrated).

The starting point of the Court's analysis is whether Mr. Clark actually misadvised Dr. Miller about the repercussions of a guilty plea. The Court must presume Mr. Clark was effective in his assistance to Dr. Miller, i.e. that he correctly informed defendant about the implications of a guilty plea. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. This is a difficult presumption to overcome, and mere conclusory allegations will not suffice. *Id.*; *Ross v. Estelle*, 694 F.2d 1008,

1011-12 (5th Cir. 1983). There must be some evidence in the record supporting defendant's claims. *Id.*

The record developed at the evidentiary hearing reflects much disagreement about the advice defendant's attorney gave. Mr. Alan Miller, defendant's brother and an attorney, testified he attended a meeting between defendant's trial attorney, Warren Clark, and defendant shortly before the trial. According to Mr. Miller, after discussing the case he was concerned a jury would find his brother guilty. Outside the presence of his brother, Mr. Miller asked Mr. Clark about the possibility of a plea agreement. Mr. Miller testified Mr. Clark responded there was no plea agreement and, in any event, a guilty plea would result only in a three-*month* sentence reduction.

Although Mr. Miller was, himself, an attorney, he knew very little about criminal law and was unfamiliar with the federal Sentencing Guidelines. Therefore, Mr. Miller testified, if Mr. Clark had spoken in terms of "levels," he would have asked for an explanation. Mr. Miller never discussed the issue of "levels" with Mr. Clark, and contends the subject never came up because Mr. Clark never employed the term. Moreover, Mr. Miller stated that after his discussion with Mr. Clark, the two returned to defendant and defendant's girlfriend. Mr. Miller testified he told defendant, in front of Mr. Clark, that he should proceed to trial because a plea agreement would only result in a three-month reduction in his sentence. According to Mr. Miller, Mr. Clark did not correct him.

Defendant, Dr. Stephen Miller, testified about the various meetings he had with Mr. Clark. Defendant Miller stated Mr. Clark never explained the Sentencing Guidelines to him, i.e., Mr. Clark never told him about offense levels or criminal history categories nor explained how the tables at the back of the Sentencing Guidelines Manual were applied. At the second meeting between Mr.

Clark and Dr. Miller, Dr. Miller brought up the subject of pleading guilty. According to Dr. Miller, Mr. Clark told him the government was only offering a three-month sentence reduction. At the meeting immediately before the trial, Dr. Miller testified that his brother, Mr. Miller, brought up the subject of a possible plea agreement. Dr. Miller testified he told his brother a plea agreement would only result in a three-month reduction in sentence, to which Mr. Clark said, "that's right."

Defendant also stated he never heard anything about "points" until after the guilty verdict, when the Presentence Report was issued. He remained unfamiliar with the point system upon which the Sentencing Guidelines are based until he was in prison and took a law class; before the class defendant thought "points" meant "months." To support defendant's position, his attorney offered into evidence at the hearing an email to Mr. Clark wherein Dr. Miller discussed the calculation of his sentence in terms of months rather than points or levels.

Defendant additionally testified that, in his discussions with Mr. Clark, he always maintained his innocence. At the hearing before this Court, defendant testified he was guilty of income tax evasion because the jury found him guilty of such. Defendant also testified, however, he could not say he acted willfully to defraud the government, which is an element of income tax evasion. *See* 26 U.S.C. § 7201. He testified that at a March 2006 meeting with Mr. Clark he made it clear to his attorney that he was not guilty because he believed he had not willfully done anything wrong.

Finally, Mr. Clark testified about his representation of defendant. Mr. Clark stated he has been an attorney for twenty-eight years and almost exclusively practices criminal law. Mr. Clark testified he and Dr. Miller had their first meeting on March 7, 2006, after defendant was arraigned. According to Mr. Clark, at this meeting he did with Dr. Miller what he does with all of the federal defendants he represents—he took out the Sentencing Guidelines, made a copy of the grid on the

back cover of the manual, discussed the sentencing scheme, spent approximately thirty minutes discussing how sentencing works in federal court, and did a rough calculation of what the defendant's sentence would be if he were found guilty. Mr. Clark testified that, at the March 7, 2006 meeting, he discussed acceptance of responsibility with Dr. Miller. He told Dr. Miller that acceptance of responsibility would result in a two-point reduction and that the third point was not guaranteed. Dr. Miller did not ask any questions indicating he did not understand Mr. Clark. Further, Dr. Miller told Mr. Clark he had not willfully violated the law and he could not, in good faith, plead guilty to the indictment.

At their next meeting, on March 23, 2006, Mr. Clark testified he had since gotten a better idea of the raw tax loss, so he brought out the Sentencing Guidelines and once against spoke about acceptance of responsibility and defendant's possible sentence. Mr. Clark remained adamant it was "impossible," "absurd," and "ridiculous," that he would have used the term "months" rather than "levels" when discussing guideline sentencing with Dr. Miller. Mr. Clark based his testimony upon his recollection of his meetings with Dr. Miller and the fact that he has represented many defendants in federal court, knows how the Sentencing Guidelines work, and follows the same basic process in discussing application of the Sentencing Guidelines with his clients.

Mr. Clark testified that at a third meeting, on April 15, 2006, he once again went over the specific sentencing guidelines and discussed how acceptance of responsibility would result in a three-level reduction in Dr. Miller's sentence. Mr. Clark testified that at this meeting, as with the other meetings, he never discussed sentence calculation in terms of "months," but rather in terms of "levels." Dr. Miller said he would consider accepting a misdemeanor plea. Mr. Clark presented Dr. Miller's proposal to the prosecutors, who flatly rejected the offer.

According to Mr. Clark, he met Alan Miller, defendant's brother, for the first time on the day before the trial, but never discussed sentencing matters with Mr. Miller because there was no question about Dr. Miller's and the government's inability to reach a plea agreement. Mr. Miller never mentioned "three months" in any context during his discussions with Mr. Clark, and if he would have, Mr. Clark testified that he would have immediately corrected him.

In sum, the evidentiary hearing testimony presents a swearing match with defendant and his brother giving one account of the discussions with Mr. Clark and Mr. Clark giving a diametrically opposite account of those discussions. Defendant presents no actual evidence, apart from his and his brother's testimony, that Mr. Clark improperly advised him. He presents no e-mails or documents where Mr. Clark discusses determination of the sentence in terms of months instead of levels and he has failed to point to anything in the trial record and/or sentencing where Mr. Clark or Dr. Miller apparently did not understand sentencing calculations. Even the testimony of Mr. Miller and Dr. Miller conflicts in places. Further, unlike other cases of ineffective assistance of counsel, when the attorney conceded he was unfamiliar with the Sentencing Guidelines, the attorney in this case remained steadfast he correctly advised defendant about the federal Sentencing Guidelines throughout his representation of defendant. *See Grammas*, 376 F.3d at 437.

With nothing more than "he-said-he-said" evidence before the Court, the Court must look to the burden of proof in making its determination. Defendant Miller faced the "highly deferential" presumption that Mr. Clark effectively represented him. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Defendant's and his brother's testimony alone is insufficient to overcome the strong presumption that Mr. Clark rendered effective assistance, especially when that testimony is unsupported by any evidence and is directly contradicted by Mr. Clark. *See id.* Proving Mr. Clark

was deficient in his representation requires more than the conclusory allegations by defendant and his brother. *See Ross*, 694 F.2d at 1011-12. Without more, such allegations cannot be the basis of a successful ineffective assistance of counsel claim. Defendant has not met his burden of proof under *Strickland*, and his first claim alleging ineffective assistance of counsel must fail. It is the opinion of the undersigned that since defendant Miller failed to satisfy his burden of proof, no explicit credibility determination is necessary. A second issue not reached is whether Miller has shown he would have pled guilty under any circumstances. Miller was steadfast that he was not guilty. If he would not have pled, then he cannot demonstrate prejudice. *See Strickland*, 466 U.S. at 667, 104 S.Ct. at 2064.

### C. Objecting to Imposition of Restitution

Defendant next contends he received ineffective assistance of counsel because his trial attorney failed to object to the improper imposition of restitution. Defendant was convicted under Title 26 of the United States Code and contends restitution is allowed only for convictions under Title 18 of the United States Code. At the September 15, 2009 hearing, Dr. Miller testified Mr. Clark never told him the imposition of restitution was illegal. Mr. Clark likewise testified he did not think the imposition of restitution was an issue and did not bring it to the Court's attention. Mr. Clark admitted before this Court he may not have completely understood restitution laws in the context of a tax case. The government contends that "claims of ineffective assistance of counsel regarding court-ordered restitution do not pertain to unlawful custody and, accordingly, fall outside the scope of section 2255." (Response in Opposition to Motion Under 28 U.S.C. § 2255, pg. 4).

Section 2255 provides, "[a] prisoner in custody under sentence of a [federal] court *claiming the right to be released* . . . may move the court which imposed the sentence to vacate, set aside or

correct the sentence." 28 U.S.C. § 2255 (emphasis added). By the statute's plain language, it is meant to provide relief only to those challenging their custody. "A monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement for [section] 2255 purposes." *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994).

Based on this rationale, the Fifth Circuit has established, "when a prisoner asserts an ineffective assistance of counsel claim *under [section] 2255*, he must satisfy *Strickland's* prejudice requirement by showing harm that relates to his custody. *Id.* (emphasis in original). If a prisoner's claim relates only to the imposition of a fine, it falls outside the scope of a section 2255 motion. *Id.* "A convicted defendant who receives an allegedly erroneous fine because of constitutionally inadequate assistance of counsel cannot seek post-conviction relief under [section] 2255." *Id.* The Fifth Circuit has extended this rule to encompass restitution, reasoning "if a fine does not relate to unlawful custody, then neither does restitution." *United States v. Walker*, No. 95-10270, 1996 WL 60750, at *3 (5th Cir. 1996) (unpublished).

Therefore, under existing Fifth Circuit precedent, defendant's claim that he received ineffective assistance of counsel in relation to his attorney's failure to object to the imposition of restitution is not cognizable under section 2255 because it does not relate to his custody. *See Segler*, 37 F.3d at 1137. Put another way, this Court could not grant Dr. Miller a release from custody or set aside his conviction and the restitution order even if the Court agreed with his contention. Since removal of the restitution requirement is wholly unrelated to defendant's custody, removal of a restitution order is not available under section 2255. *See* 28 U.S.C. § 2255.

Moreover, the Fifth Circuit has stated that "in the absence of an agreement by the defendant, restitution may not be ordered for a Title 26 offense *except as a condition of probation or supervised*

<br/>

*release*, under 18 U.S.C. 3583(d), 3563(b)(2), and 3556." *United States v. Nolen*, 523 F.3d 331, 332 (5th Cir. 2008) (emphasis added). In the instant case, the District Court ordered defendant pay restitution only as part of his supervised release, which was proper. *See id.* Therefore, even if defendant's ineffective assistance of counsel claim regarding the restitution order was cognizable, it would likely fail because it appears his attorney's representation was not deficient. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding an attorney does not render ineffective assistance by failing to make futile objections). Defendant's second contention must fail.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge that the remainder of the motion to vacate, set aside, or correct sentence by petitioner STEPHEN P. MILLER be DENIED.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 16th day of September, 2010.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).